**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| HUGHES TECHNICAL SERVICES, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 5:20-cv-03885 |
| v. | : | |
| | : | |
| GLOBAL CONSULTING AND MECHANICAL | : | |
| SERVICES, LLC, | : | |
| | : | |
| Defendant. | : | |

_____

# O P I N I O N

**Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 10—GRANTED**

**Joseph F. Leeson, Jr.**                                                    **December 15, 2020**
**United States District Judge**

      This is a diversity action for breach of contract stemming from an alleged failure to remit

payment for consulting and engineering services associated with three power plants.  Plaintiff

Hughes Technical Services, LLC ("HTS"), a Pennsylvania limited liability company, states that

it contracted with Defendant Global Consulting and Mechanical Services, LLC ("GCMS"), a

Texas limited liability company, to provide these services at power plants in Iraq, California, and

Mexico.  HTS states that despite providing these services to GCMS, GCMS has failed to remit

payment of $498,686.73.  HTS commenced this action as a consequence.

      GCMS now moves to dismiss the Amended Complaint on the basis that this Court lacks

personal jurisdiction over it.  Upon consideration of GCMS's motion to dismiss and HTS's

opposition thereto, and for the reasons set forth below, the motion is granted.

I.      BACKGROUND

A.      Facts Alleged in the Amended Complaint[1]

HTS is a Pennsylvania limited liability company with a principal place of business located in Lancaster, Pennsylvania.  Amended Complaint ("Am. Compl."), ECF No. 9, ¶ 1.  The two members of HTS are citizens of Pennsylvania and Florida.  *Id*. ¶ 2.  HTS provides power plant commissioning and maintenance services for a variety of gas and steam turbines, as well as electrical and mechanical gas systems.  *Id*. ¶ 3.  GCMS is a Texas limited liability company with a principal place of business located in Hughes Springs, Texas.  *Id*. ¶ 4.  The several members of GCMS that HTS has been able to identify are citizens of Texas.  *Id*. ¶ 5.  GCMS works with the gas turbine power plant industry and offers services ranging from construction to commissioning and startup.  *Id*. ¶ 7.

Pursuant to a written agreement, GCMS engaged and contracted with HTS to provide commissioning, consulting, and engineering services on a project at the Al-Shuaiba power plant in Iraq.[2]  Am. Compl. ¶ 11.  Throughout June, July, August, September, and October of 2018, HTS satisfactorily performed these services and issued GCMS a series of invoices in an amount

---

[1]      "In reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a court 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'"  *Hepp v. Facebook, Inc., No*. CV 19-4034, 2020 WL 4437036, at *3 (E.D. Pa. Aug. 3, 2020) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).  However, as explained more fully below, unlike a motion to dismiss under Rule 12(b)(6), a court reviewing a motion to dismiss under Rule 12(b)(2) may consider sworn affidavits and other material beyond the pleadings in support of the existence of jurisdiction.  *Levy v. Jaguar Land Rover N. Am., LLC.*, No. CV 19-13497, 2020 WL 563637, at *3 (D.N.J. Feb. 4, 2020) ("[I]n determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.").

[2]      This Agreement is titled "Independent Contractor Services Agreement" and a copy of it is attached as Exhibit A to the Amended Complaint.  *See* ECF No. 9-1.  The Agreement is dated October 1, 2014 and states it expires on December 31, 2016.

totaling $283,161.69.[3]  *Id.* ¶ 12.  HTS avers that despite receiving no notice of any complaints or problems from GCMS or any other entity associated with the Al-Shuaiba power plant, $186,850.72 of the $283,161.69 remains unpaid.  *Id.* ¶¶ 13-14.

GCMS also engaged HTS to provide on-site support services at the La Paloma power plant in California.  Am. Compl. ¶ 15.  This engagement was effectuated by way of purchase order and seemingly without an independent agreement similar to the agreement related to the Al-Shuaiba power plant.[4]  *Id.*  HTS states these services were provided around July 2019, and to the satisfaction of GCMS.  *Id.* ¶ 16.  Around July 9, 2019, HTS issued to GCMS an invoice for its services totaling $21,424.00.[5]  *Id.* ¶ 17.  HTS avers that despite receiving no notice of any complaints or problems from GCMS or any other entity regarding HTS's services, GCMS has made no payments on this invoice, leaving the total balance unpaid.  *See id.* ¶¶ 18-19.

GCMS additionally engaged HTS, via purchase order, to provide on-site engineering services at the Monterrey II power plant in Mexico.[6]  Am. Compl. ¶ 20.  These services were provided through February and March 2020, and to the satisfaction of GCMS.  *Id.* ¶ 21.  Around March 3, 2020, HTS issued to GCMS an invoice for its services totaling $290,412.01.[7]  *Id.* ¶ 22.  HTS avers that, as with services at the La Paloma power plant, it has received no payment on the

---

[3]     Copies of these invoices are attached as Exhibit B to the Amended Complaint.  *See* ECF No. 9-2.

[4]     HTS's allegation on this point states that "GCMS engaged HTS via purchase order to provide on-site support services at the La Paloma power plant in California."  A copy of this purchase order is attached as Exhibit C to the Amended Complaint.  *See* ECF No. 9-3.

[5]     A copy of this invoice is attached as Exhibit D to the Amended Complaint.  *See* ECF No. 9-4.

[6]     A copy of this purchase order is attached as Exhibit E to the Amended Complaint.  *See* ECF No. 9-5.

[7]     A copy of this invoice is attached as Exhibit F to the Amended Complaint.  *See* ECF No. 9-6.

$290,412.01 despite having had no notice of complaints associated with its work.  *See id.* ¶¶ 23-24.

According to HTS, the total amount owed by GCMS for the work described above is $498,686.73.  Am. Compl. ¶ 25.  What is more, HTS states that GCMS has acknowledged the existence of this outstanding debt.  According to HTS, GCMS's marketing manager Brooke Smoak, in responding to HTS emails inquiring about the outstanding debt, acknowledged the outstanding invoices and explained that with respect to the Monterrey II project, GCMS was waiting for payment from the contractor Power Engineering Services and Solutions ("PESS"). *Id.* ¶¶ 26-27.  Ms. Smoak also stated that GCMS was negotiating payments for outstanding amounts owed to it by former clients and hoped to have a payment plan to HTS in the near future.[8]  *Id.* ¶ 27.  These email communications occurred in March 2020; HTS has received no proposed payment plan from GCMS to date.  *See id.* ¶¶ 27-28.

Based upon the above averments, HTS's Amended Complaint asserts one claim for breach of contract, and one claim of unjust enrichment, related to the outstanding balances for work performed on the three at-issue projects.  *See* Am. Compl. ¶¶ 29-37.

B.    **Procedural Background**

HTS commenced this action with the filing of the initial Complaint on August 10, 2020. *See* ECF No. 1.  On September 21, 2020, observing that GCMS had failed to respond to the Complaint despite have been served, the Court issued notice that if HTS failed to take action seeking a notice of default within ten days, the Court would dismiss the action for failure to prosecute.  *See* ECF No. 5.  Thereafter counsel for GCMS noticed an appearance, and on

---

[8]    Copies of these emails are attached as Exhibit G to the Amended Complaint.  *See* ECF No. 9-7.

September 24, 2020, pursuant to stipulation, the Court issued an Order permitting HTS to amend its Complaint.  *See* ECF Nos. 6-8.  HTS filed its Amended Complaint on September 28, 2020, *see* ECF No. 9, and GCMS moved to dismiss the Amended Complaint for lack of personal jurisdiction on October 12, 2020, *see* ECF No. 10.

## II.     LEGAL STANDARD AND APPLICABLE LAW

### A.     Legal Standard:  Motions Under Federal Rule of Civil Procedure 12(b)(2)

A motion to dismiss a pleading for lack of personal jurisdiction is properly raised under Federal Rule of Civil Procedure 12(b)(2).  A Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990).  Where a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of making a *prima facie* showing that jurisdiction exists.  *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 550 (E.D. Pa. 2018) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)); *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005).  "The plaintiff meets this burden by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction.'"  *Hepp v. Facebook, Inc.*, No. CV 19-4034, 2020 WL 4437036, at *3 (E.D. Pa. Aug. 3, 2020) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)).  A plaintiff may not "rely on the bare pleadings alone in order to withstand a defendant's . . . motion to dismiss for lack of personal jurisdiction." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). "Instead, the 'plaintiff must respond with actual proofs, not mere allegations." *Hepp*, 2020 WL 4437036, at *3 (quoting *Time Share Vacation Club*, 735 F.2d at 66 n.9).

In responding to a challenge to personal jurisdiction, "plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." *Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  Where a court reviewing a Rule 12(b)(2) motion declines to hold an evidentiary hearing, "the Court is bound only to consider Plaintiff's Complaint and supporting evidence." *Laverty v. Cox Enterprises, Inc.*, No. CV18-1323, 2019 WL 351905, at *1 (D.N.J. Jan. 29, 2019) (citing *O'Connor*, 496 F.3d at 316).  That is to say, where a district court declines to "hold an evidentiary hearing . . . plaintiff[s] need only establish a prima facie case of personal jurisdiction." *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004)).

## B.     Legal Principles:  Personal Jurisdiction

Federal Rule of Civil Procedure 4(k) provides that personal jurisdiction in a United States District Court is established in accordance with the law of the state in which the District Court sits.  *See* FED. R. CIV. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ."); *see O'Connor*, 496 F.3d at 316. This Court therefore looks to the law of Pennsylvania, and Pennsylvania's long-arm statute in particular, to determine whether HTS can establish the existence of personal jurisdiction over GCMS.  *See id.* ("Because this case comes to us from the United States District Court for the Eastern District of Pennsylvania, we apply the Pennsylvania long-arm statute.") (citation omitted).  Pennsylvania's long-arm statute provides that "the jurisdiction of the tribunals of this Commonwealth"—and of this Court as well pursuant to Federal Rule of Civil Procedure 4(k)(1)(A)—"shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under

the Constitution of the United States."  42 PA. CONS. STAT. § 5322(b); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) ("The Pennsylvania [long-arm] statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment.").  "Accordingly, in determining whether personal jurisdiction exists," this Court must ask "whether, under the Due Process Clause [of the Fourteenth Amendment], the defendant has 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *O'Connor*, 496 F.3d at 316-17 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"These basic due process principles are reflected in the two recognized types of personal jurisdiction"—specific jurisdiction and general jurisdiction.  *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).  For HTS's suit to proceed, this Court must be able to exercise one of these forms of personal jurisdiction over GCMS.

A court may exercise *specific* jurisdiction where a "plaintiff's claim arise[s] from the defendant's contacts with the forum in which the court sits."  *Hepp*, 2020 WL 4437036, at *3. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)); *Marten*, 499 F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.").  The Third Circuit has outlined a three-part inquiry to determine whether specific jurisdiction exists:

> First, the defendant must have "'purposefully directed' his activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Helicopteros,* 466 U.S. at 414. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"  *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe,* 326 U.S. at 320).

*Marten*, 499 F.3d at 296.  To satisfy the first element of the inquiry, "[t]here must be a deliberate targeting of the forum . . . . Moreover, the defendant must have purposefully avail[ed] itself of the privilege of conducting activities within the forum."  *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 463-64 (E.D. Pa. 2019) (internal quotation marks and citations omitted).  With respect to the second element of the inquiry, the "analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests"—that is, the relatedness between the benefits and obligations a forum state's law extends to an out-of-state defendant as a result of conduct directed at the forum state.  *Id.* at 464 (quoting *O'Connor*, 496 F.3d at 323).  When the first two elements of the inquiry are satisfied, the existence of minimum contacts is established, making "jurisdiction presumptively constitutional."  *O'Connor*, 496 F.3d at 324.  In this circumstance, exercising jurisdiction comports with "traditional notions of fair play and substantial justice," and a "defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id*. (quoting *Burger King,* 471 U.S. at 477).

For *general* jurisdiction to exist, with respect to a corporate defendant in particular, the Court's inquiry "is whether that corporation's 'affiliations with the [forum] State are so continuous and systemic as to render [it] essentially at home in the forum State.'"  *Lutz*, 571 U.S. at 137 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).  General jurisdiction may be found to exist whether or not a defendant's contacts with a forum state are related to the plaintiff's cause of action.  *Metcalfe v. Renaissance Marine, Inc.*, 556 F.3d 324, 334 (3d Cir. 2009).  "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Daimler AG*, 571 U.S. at 137 (quoting Lea Brilmayer , Jennifer Haverkamp, Buck Logan, *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 735 (1988)).  "Those affiliations have the virtue of being unique—that is, each

ordinarily indicates only one place—as well as easily ascertainable." *Id.*  Although the Supreme

Court has "not foreclose[d] the possibility that in an exceptional case, a corporation's operations

in a forum other than its formal place of incorporation or principal place of business may be so

substantial and of such a nature as to render the corporation at home in that State," *id.* at 139

n.19, the Third Circuit has observed that to establish general jurisdiction in another state under

such exceptional circumstances is "incredibly difficult," *Chavez v. Dole Food Co., Inc.*, 836 F.3d

205, 223 (3d Cir. 2016).

## III.    THE CONTENTIONS OF THE PARTIES

### A.    GCMS's Arguments that Personal Jurisdiction Does Not Exist

Addressing general personal jurisdiction first, GCMS contends that as a Texas limited

liability company with a principal place of business of Texas, it "is not 'at home' in

Pennsylvania based on the traditional test. Further, there are no 'exceptional circumstances' to

justify a finding that GCMS is 'at home' in Pennsylvania such as to meet the 'incredibly

difficult' standard."  GCMS's Memorandum in Support of its Motion to Dismiss ("GCMS's

Mem."), ECF No. 10-1, at 9.  In support of this position, and in opposition to HTS's argument as

set forth in the Amended Complaint that GCMS is "at home" in Pennsylvania "through its

contracting and numerous interactions with HTS, by supplying employees to HTS to work on

projects in Pennsylvania[,] and by utilizing HTS to consult from Pennsylvania on projects,"[9] Am

Compl. ¶ 9, GCMS points to the Supreme Court's decision in *BNSF Railway Co. v. Tyrrell*, 137

S. Ct. 1549 (2017).  In that decision, the Supreme Court found that Montana courts were unable

to exercise general jurisdiction over BNSF Railway, despite maintaining over 2,000 miles of

---

[9]    The Court did not recite these assertions earlier in this Opinion as they are not factual
allegations, but rather constitute legal argument.

track and employing more than 2,000 employees in the state, BNSF was not "so heavily engaged in activity in Montana as to render [it] essentially at home." *Id.* at 1559 (internal quotation marks omitted). GCMS contends that, as with BNSF, when its business operations are viewed in their entirety, any business it has conducted in Pennsylvania—two projects at most—falls far short of what is necessary to satisfy the "exceptional circumstances" standard for general jurisdiction of an out-of-state corporation. *See* GCMS's Mem. at 10. GCMS similarly contends that it "has no permanent employees in Pennsylvania, it has no assets in Pennsylvania, and its communications with HTS have been by email and telephone and not direct meetings in Pennsylvania." *Id.*

As to the absence of specific jurisdiction, GCMS first argues that there is no evidence that any agreement related to services for the three at-issue projects was entered into in Pennsylvania. *See* GCMS's Mem. at 11. Rather, "all contracting for the 3 projects at issue in the present action would have occurred by email or telephone correspondence, and there were no direct meetings in Pennsylvania related to any of these 3 projects." *Id.* "Regardless," GCMS contends that "none of the projects were located in Pennsylvania and simply because HTS happens to be a Pennsylvania company does not mean this Court has specific personal jurisdiction over every foreign company that contracts with HTS." *Id.* Under the applicable three-part inquiry, GCMS states that the circumstances do not warrant the exercise of specific jurisdiction: (1) GCMS did not purposefully direct its activities towards Pennsylvania; (2) HTS's claims did not arise out of any of GCMS's activities purposefully directed towards Pennsylvania; and (3) the exercise of jurisdiction over GCMS in Pennsylvania would not comport with fair play and substantial justice. *See id.* at 11-14. In support of its argument with respect to element (3), GCMS states that the "Independent Contractor Services Agreement,"

which governed the Iraq power plant project (and potentially the other two projects),[10] "contains

a forum selection clause providing that Texas is the exclusive forum for resolving all disputes

between the parties." *Id*. at 13.  Therefore, according to GCMS, "it can hardly be stated that

exercise of personal jurisdiction over GCMS in Pennsylvania would comport with fair play and

substantial justice." *Id*. at 14.

> **B.**      **HTS's Arguments that Personal Jurisdiction Exists**

In support of the contention that personal jurisdiction exists, HTS points primarily to the

existence of a "Teaming Agreement," entered into in 2014 by HTS and GCMS.[11]  HTS states the

purpose of the Teaming Agreement was "to memorialize the parties' desire to 'combine their

capabilities' and 'market and sell certain "Turbine Services" and "Start-Up Services" to third-

party customers worldwide.'"  HTS's Memorandum in Opposition ("HTS's Opp'n."), ECF No.

11-1, at 2.  According to HTS, "[t]he Teaming Agreement establishes exclusive obligations

between Hughes and GCMS to use or cause to be used each other's services for power plant

projects." *Id*. at 3.  Additionally, the Teaming Agreement obligates the parties to market and sell

each other's services to third parties, as well as to collaborate and hold periodic conference calls

and meetings, with the goal of encouraging sales of each other's services. *Id*. at 4.  HTS claims

that through the Teaming Agreement, not only is GCMS entitled to receive business from HTS

directly, "it also is entitled to an in state marketing and advertising campaign by [HTS] to

'promote, encourage, and drive sales of [GCMS']" services. *Id*. at 5.  Therefore, "GCMS

---

[10]      GCMS states that Section 11 of that Agreement "seemingly would apply to 'all Project
Assignments and services undertaken by Contractor for Company" and therefore "would also
cover the California and Mexico projects."  GCMS's Mem. at 13.
[11]      A copy of the Teaming Agreement is attached to HTS's memorandum in opposition as
Exhibit A. *See* ECF No. 11-2.

purposefully targeted and directed commercial efforts toward Pennsylvania, and availed itself of the privilege of conducting business in Pennsylvania."  *Id*.

As it relates to the governing legal principles, HTS's first argument for jurisdiction is that the Teaming Agreement makes this an "exceptional" case, warranting the exercise of general jurisdiction over GCMS in Pennsylvania.  *See* HTS's Opp'n. at 11-13.  In support of this position, HTS states that "[t]he parties' exclusive service and marketing/advertising obligations under the Teaming Agreement solidifies an affiliation with and operation in Pennsylvania that is so continuous and systematic as to render GCMS essentially at home in Pennsylvania."  *Id*. at 12. HTS also points to two instances where GCMS sent its employees to work on projects in Pennsylvania:  GCMS sent two of its employees to work with HTS on a project at the Montour power plant in Washingtonville, Pennsylvania,[12] and GCMS advertises on its website that it has completed a project (unrelated to HTS and the Teaming Agreement) in Bucks County, Pennsylvania.  *See id.*

In the alternative, HTS states that this Court has specific jurisdiction over GCMS.  On this point, HTS first contends that "[t]he Teaming Agreement is definitive proof that GCMS targeted [its activities toward] Pennsylvania specifically."  HTS's Opp'n. at 13.  In particular, [t]he Teaming Agreement created a continuing relationship with exclusive obligations between GCMS and [HTS], and GCMS, therefore, intended to avail itself of the privilege of conducting business in Pennsylvania."  *Id.*  Additionally, HTS states that pursuant to the Teaming Agreement, HTS circulated to its customers an advertising document containing biographical information for GCMS member Julius M. Smoak and former GCMS member William J. Austin;

---

[12]      HTS supports this averment with an affidavit, attached to its memorandum in opposition as Exhibit B.

because HTS "acted as GCMS' Pennsylvania surrogate for marketing and advertising its services," this "compounds GCMS' intent to avail itself of the privilege of conducting business in Pennsylvania." *Id*. at 13-14.

HTS next claims the exercise of specific jurisdiction is warranted, as the three at-issue power plant projects came about *because of* the Teaming Agreement.  HTS's Opp'n. at 5. According to HTS, because of the Teaming Agreement, GCMS (1) engaged and contracted with HTS to provide services the Al-Shuaibi power plant; (2) engaged HTS through purchase order to provide services at the La Paloma power plant; and, similarly (3) engaged HTS through purchase order to provide services at the Monterrey II power plant.  *See id*. at 5-6.  It follows, according to HTS, that its "claims arise from or relate to GCMS' activities in Pennsylvania." *Id*. at 15.

Finally, HTS argues that because GCMS has purposefully availed itself of the benefit of conducting business in Pennsylvania, the exercise of specific jurisdiction comports with notions of fair play and substantial justice.  Pls.' Opp'n. at 15.

### C.  GCMS's Arguments in Reply

In a brief reply memorandum, GCMS rebuts HTS's arguments for jurisdiction.  First, in opposing the notion that this is an "exceptional" case warranting general jurisdiction, GCMS observes that the Teaming Agreement states an intent between the parties "to market and sell certain Turbine Services and Start-Up Services to third-party customers **worldwide**."  GCMS's Memorandum in Reply ("GCMS's Reply"), ECF No. 12, at 1 (emphasis in original) (quoting Termination Agreement).  GCMS contends that according to HTS, "since Pennsylvania is in the 'world', and the Parties desired to market their combined capabilities 'worldwide', the Teaming Agreement demonstrates that [GCMS] was intending 'for its services to be marketed/advertised by [HTS] to customers in Pennsylvania and beyond.'"  *Id*.  at 1-2.  GCMS states that this was the

exact argument rejected in *BNSF Railway*, since under this logic, GCMS would be subject to personal jurisdiction within all fifty states, as each state is "within the 'world.'" *Id.* at 2. Moreover, GCMS observes that in only one project out of thirty nine did GCMS allegedly supply employees to work with HTS in Pennsylvania, and one in-state project out of thirty-nine does not constitute "exceptional circumstances" warranting the exercise of general jurisdiction. *Id.* Also, the Teaming Agreement expressly provides that it "shall in all respects be construed as a contract executed in the State of Georgia, USA and that the laws of the State of Georgia, USA, without regard to its conflict of laws provisions, shall govern this Agreement and all actions brought under this Agreement." *Id.* (quoting Teaming Agreement).

As to why specific jurisdiction does not exist, GCMS takes issue with the fact that the Teaming Agreement was not even mentioned in the Amended Complaint, which pleaded that each at-issue project arose out of an independent contract. GCMS's Reply at 3. Moreover, at least one of these "contracts"—the Independent Contractor Services Agreement for the Iraq power plant—has an express forum selection clause, stipulating that Texas is the proper forum for all disputes. *See id.* at 4. At the end of the day, GCMS contends, "nothing about the Teaming Agreement creates any cause of action in favor of [HTS]. Rather, [HTS's] rights all derive from separate contracts, at least one of which provides for exclusive personal jurisdiction in Texas." *Id.*

## IV.   DISCUSSION

### A.   This Court Lacks General Jurisdiction over GCMS

The Court begins with the easier of the two forms of personal jurisdiction to address. While keeping in mind that because the Court has not held an evidentiary hearing, HTS's allegations are accepted as true and all factual disputes are resolved in its favor, it is nonetheless

clear that the Court does not possess general jurisdiction over GCMS.  The "paradig[m] . . . bases for general jurisdiction," *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), are not present here:  GCMS is neither organized under the laws of Pennsylvania, nor does it have its principal place of business in Pennsylvania.  Indeed, it does not appear to be disputed that GCMS has no formal, physical presence in Pennsylvania at all.

Recognizing this, HTS focuses its argument on the narrow exception that certain "extraordinary circumstances" might provide to the general rule that a company is "at home" only in the state(s) under whose laws it is organized and in which its principal place of business is located.  However, HTS's primary argument on this point—that the Teaming Agreement makes this an "exceptional" case, warranting the exercise of general jurisdiction in Pennsylvania—necessarily fails.  Although HTS is a Pennsylvania limited liability company operating principally in Pennsylvania, and although the Teaming Agreement purports to obligate GCMS to exclusively market and promote HTS's services (and vice versa), it does not follow that these obligations create or constitute affiliations with Pennsylvania that are so "continuous and systematic" as to render GCMS "essentially at home" in Pennsylvania.  *Daimler AG*, 571 U.S. at 139.

While this conclusion comports with common sense, GCMS astutely points to two provisions of the Teaming Agreement that further illustrate why the Agreement is alone incapable of creating or forming these affiliations with Pennsylvania.

First, the Teaming Agreement states that "the Parties desire to combine their capabilities . . . to market and sell certain Turbine Services and Start-Up Services to third-party customers *worldwide*."  Teaming Agreement at 1 (emphasis added).  As the clear intent of the Teaming Agreement is to facilitate mutually beneficial conduct knowing no geographic limitation, and

indeed conduct that is intended to benefit both parties in markets all over the world, the Agreement's mutual obligations by themselves do little work in creating sufficiently continuous and systematic affiliations with a particular forum—and actually weigh against an exercise of general jurisdiction in any particular forum.  Critical to this logic is the key feature of general jurisdiction:  an individual or entity is typically only "at home" in one forum; it follows that an individual or entity is typically subject to general jurisdiction in only one forum.  *See Daimler AG*, 571 U.S. at 137 (explaining that the paradigm bases for general jurisdiction of incorporation and principal place of business "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." (citing *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010))).  It cannot be the case that the Teaming Agreement's mutual obligations form affiliations sufficient to exercise general jurisdiction in any and all forums in which the obligations are performed, where the Agreement contemplates that those obligations may be performed in any forum throughout the country.

Second, to the extent the Teaming Agreement *is* capable of imbuing the courts of any forum with general jurisdiction over GCMS, it would appear that forum would be Georgia, not Pennsylvania.  Paragraph 12.5 of the Teaming Agreement provide as follows:

> The Parties agree that this Agreement shall in all respects be construed as a contract executed in the State of Georgia, USA and that the laws of the State of Georgia, USA, without regard to its conflict of laws provisions, shall govern this Agreement and all actions brought under this Agreement.

While the Court does not make a finding that based on this provision the exercise of general jurisdiction over GCMS (or HTS) would be appropriate in Georgia—the considerations outlined in the preceding paragraphs arguably weigh against such a finding—this choice-of-law provision is illustrative of the lack of an affiliation between GCMS and Pennsylvania in light of the terms

of the Agreement. *See Goodway Grp. v. Sklerov*, No. CV 18-0900, 2018 WL 3870132, at *6

(E.D. Pa. Aug. 15, 2018) (explaining that although not dispositive, a choice of law provision is

"relevant to the jurisdictional analysis"); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 482

(1985).[13]

      Finally, HTS's argument that general jurisdiction is present in Pennsylvania because

GCMS allegedly sent employees to participate in two projects in Pennsylvania, similarly fails.

As the Supreme Court emphasized in *BNSF Railway v. Tyrrell*, the general jurisdiction inquiry

"'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that

operates in many places can scarcely be deemed at home in all of them.'" 137 S. Ct. 1549, 1559,

(2017) (quoting *Daimler AG*, 571 U.S. at 139 n.20). Given HTS's averment that GCMS and

HTS have worked together on thirty-nine projects, *see* HTS's Opp'n, at 12, the fact that GCMS

has engaged in only *two* projects in Pennsylvania (and only one of which was with HTS),

precludes a finding that GCMS's affiliations with Pennsylvania are so continuous and systematic

so as to subject it to general jurisdiction in Pennsylvania.

      GCMS is neither organized under the laws of Pennsylvania, nor has its principal place of

business in Pennsylvania. GCMS maintains no formal physical presence in Pennsylvania. In

light of these facts, HTS has failed to make a *prima facie* showing of the existence of

---

[13]    The cases discussing the relevance of choice-of-law provisions primarily discuss them in the context of minimum contacts for *specific* jurisdiction. However, to establish continuous and systematic contacts for general jurisdiction necessarily requires establishing the existence of minimum contacts that would satisfy the standard for specific jurisdiction. *See Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F. Supp. 1048, 1051-52 (E.D. Pa. 1994) ("The minimum contacts standard . . . is only the first step in evaluating general jurisdiction. In order to establish general jurisdiction, the plaintiff must show significantly more contacts with the forum state than the mere minimum contacts required for specific jurisdiction." (citing *Dollar Sav. Bank v. First Sec. Bank of Utah,* 746 F.2d 208, 212 (3d Cir.1984))). Therefore, relevance as to minimum contacts translates to relevance as to continuous and systematic contacts for purposes of general jurisdiction.

"extraordinary circumstances" sufficient for the exercise of general jurisdiction over GCMS in Pennsylvania.

**B.      This Court Lacks Specific Jurisdiction Over GCMS**

Unlike general jurisdiction, specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks omitted); *Hepp v. Facebook, Inc.*, No. CV 19-4034, 2020 WL 4437036, at *3 (E.D. Pa. Aug. 3, 2020) ("[S]pecific jurisdiction[ ] requires that the plaintiff's claim arise from the defendant's contacts with the forum in which the court sits."). As discussed previously, for this affiliation to warrant the exercise of specific jurisdiction, a defendant must have purposefully directed its activities towards the forum state and the plaintiff's claims must arise out of or relate to at least one of those activities. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). If these requirements are met, a court may also consider other factors to determine whether the exercise of jurisdiction comports with notions of fair play and substantial justice. *Id.*

HTS's claims against GCMS sound in contract. The act of contracting with a Pennsylvania company does not, alone, subject an out-of-state defendant to specific jurisdiction in Pennsylvania. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Rather, "[i]n determining [specific] jurisdiction over a breach of contract claim," the Court "must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). District courts in this Circuit "have required strong evidence of purposeful contacts" when ruling on "cases involving out-of-state defendants employed by, or in other contractual relationships with, in-state plaintiffs."

*Goodway,* 2018 WL 3870132, at *5 (citing *Team First Consulting, LLC v. Hangliter,* 2007 WL

1302440, at *5 (D.N.J. Apr. 27, 2007)).  "Infrequent or minimal communications do not provide

an adequate basis for jurisdiction."  *Id.* (citing *SMB Consulting & Investing LLC v. Apple Valley*

*Waste Serv., Inc.*, 2011 WL 2937432, at *3 (E.D. Pa. July 21, 2011) (holding that defendant's

mail and telephone communications with plaintiff in Pennsylvania were not sufficient to find

personal jurisdiction, even in conjunction with defendant's contract with plaintiff that was

executed in Pennsylvania), and *Team First Consulting,* 2007 WL 1302440, at *5 (finding

"informational communications in furtherance of a contract" were not sufficient to find

jurisdiction over a defendant who was employed by an in-state corporation)).

    As an initial matter, without even engaging in the minimum contacts inquiry, it is clear

that this Court does not possess specific jurisdiction over GCMS with respect to HTS's claims as

they relate to the Al-Shuaiba power plant project.[14]  HTS states that the Independent Contractor

Services Agreement, which is an exhibit to the Amended Complaint, governs the parties'

obligations with respect to the Al-Shuaiba project.  *See* Am. Compl. ¶ 11.  Within Section 11(d)

of this Agreement is a forum selection clause, which provides, in relevant part, that "[e]ach of

the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state

courts located in Texas, as applicable, for any matter arising out of or relating to this

Agreement."  "Personal jurisdiction is . . . a waivable right, and litigants can give 'express or

implied consent to the personal jurisdiction of [a] court' through a 'variety of legal

arrangements,' including forum selection clauses in contracts executed by the parties."  *Skold v.*

*Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 605 (E.D. Pa. 2015) (citing *Ins. Corp. of Ir., Ltd. v.*

---

[14]    "Generally, courts are directed to evaluate specific jurisdiction on a claim-by-claim basis."  *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 464 (E.D. Pa. 2019).

*Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.")).  Because the parties have stipulated to personal jurisdiction exclusively in federal and state courts located in Texas, those courts, and only those courts, can exercise personal jurisdiction over HTS and GCMS to adjudicate claims arising under the Independent Contractor Services Agreement.  Consequently, this Court lacks such jurisdiction over GCMS with respect to HTS's claims pertaining to the Al-Shuaiba project.

The Court next turns to the inquiry as to whether GCMS has maintained sufficient minimum contacts with Pennsylvania for this Court to exercise specific jurisdiction with respect to HTS's claims pertaining to the La Paloma and Monterrey II projects.  Pursuant to the below analysis, the Court finds that HTS has failed to make a *prima facie* showing (1) that GCMS "purposefully directed [its] activities" at Pennsylvania, or (2) that HTS's claims "arise out of or relate to" any activities that might have been purposefully directed at Pennsylvania.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).  As such, the Court is unable to exercise specific jurisdiction over GCMS with respect to HTS's remaining claims.

The first step in the analysis requires the Court to determine which document, if any, is the source of the obligations that HTS claims GCMS has failed to satisfy.  *See Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 773 (E.D. Pa. 2012) ("In analyzing specific jurisdiction in the context of a breach of contract claim . . . . [t]he court evaluates the totality of the circumstances, including the location and character of the contract negotiations[, and] the terms of the contract . . . .").  There appear to be three possibilities.  First, HTS alleges that "GCMS engaged HTS via purchase order to provide on-site support services at the La Paloma power plant," and "on-site engineering services at the Monterrey II Power Station

in Mexico."  Am. Compl. ¶¶ 15, 20.  Second, GCMS suggests that the Independent Contractor

Services Agreement is applicable to the La Paloma and Monterrey II projects as well as the Al-

Shuaiba project.  GCMS points to the language of Section 1 of that Agreement, which states, in

relevant part, that "[t]he terms of this Agreement will govern all Project Assignments and

services undertaken by Contractor [HTS] for Company [GCMS]."  GCMS's Mem. at 12-13.

Third, in opposing GCMS's motion to dismiss, HTS asserts that "[t]he Iraq, California and

Mexico power plant projects at issue in this action came about because of the Teaming

Agreement."  HTS's Opp'n. at 14.

HTS faces two problems in attempting to show that GCMS purposefully directed its

contract-related activities towards Pennsylvania.  First, there is no indication that GCMS

"solicited, negotiated, or executed the contract[s] in the forum state."  *Penco Prod., Inc. v. WEC*

*Mfg., LLC*, 974 F. Supp. 2d 740, 750 (E.D. Pa. 2013).  This holds true whether the relevant

contractual instrument or document is the purchase orders, the Independent Contractor Services

Agreement, or the Teaming Agreement.  Indeed, the only connection to Pennsylvania identified

by HTS is *HTS's* location in and business connections to Pennsylvania.  The second problem

HTS encounters is that the terms of the three potential contract documents explicitly contemplate

that activities carried out to effectuate their purposes be directed towards and share affiliations

with forums *other* than Pennsylvania.  As already discussed, the Independent Contractor Services

Agreement is controlled by Texas law, and can be litigated exclusively in Texas courts.  The

Teaming Agreement's choice-of-law provision indicates the intent of the parties to avail

themselves of the benefit of Georgia law.  Similarly, the "Terms and Conditions" rider to

GCMS's purchase order that allegedly engaged HTS with respect to the Monterrey II project

states that "[t]his Contract and any Work Order shall be governed by the laws of the State of

Texas without regard to its conflict of law provisions."  ECF No. 9-5 at 7.  These two considerations—(1) the absence of any indication that the relevant contractual instruments were negotiated or solicited by GCMS in Pennsylvania, and (2) the unambiguous terms of those instruments, which indicate the parties' desire to avail themselves of the benefits of the law of forums other than Pennsylvania—weigh against a finding that GCMS has purposefully directed its conduct towards Pennsylvania in a manner sufficient to support specific jurisdiction.

In view of the totality of the circumstances, with the exception of a single alleged project with HTS in Pennsylvania out of a total of thirty-nine projects, there has been no showing of any contact between GCMS and Pennsylvania beyond *HTS's* location in and organization under the laws of Pennsylvania.  This indirect connection to the forum is insufficient to warrant the exercise of specific jurisdiction.  *See Goodway Grp. v. Sklerov*, No. CV 18-0900, 2018 WL 3870132, at *7 (E.D. Pa. Aug. 15, 2018) ("Plaintiff asserts that employee files are stored in Pennsylvania, that the retirement benefits of all of its employees are overseen by a Pennsylvania employee, and that employees are paid through a Pennsylvania bank. These facts, however, do not show purposeful availment by the Individual Defendants, or that 'all of the essential function' were 'channeled through' Pennsylvania." (quoting *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 355 (E.D. Pa. 2016))); *compare Numeric Analytics, LLC*, 161 F. Supp. 3d at 355 (finding specific jurisdiction where, "[i]n short, all of the essential functions that allowed Defendants to earn a living were channeled through Pennsylvania. It bears mention that all of these links with Pennsylvania are characteristic of a traditional employer-employee relationship"); *Walsh v. Alarm Sec. Grp., Inc.*, 157 F. Supp. 2d 501, 506-07 (E.D. Pa. 2001) ("In its assertions [opposing jurisdiction], Defendant overlooks the fact that the contract was to be performed in Pennsylvania, and that the breach occurred there as well. Defendant purposefully

solicited Plaintiff as its employee for its Pennsylvania office. Plaintiff was contracted to perform work exclusively in Pennsylvania for Defendant's benefit. Accordingly, Defendant's contact with Pennsylvania was not random, fortuitous, or attenuated. Rather, it was purposeful, pre-meditated, and intentional.").

However, even if the Court found that GCMS's activities with respect to HTS were purposefully directed towards Pennsylvania in a manner sufficient to indicate that GCMS intended to avail itself of the benefits of Pennsylvania law, the claims raised in HTS's Amended Complaint do not "arise out of or relate to" any such activities. *O'Connor*, 496 F.3d at 317. Rather, HTS's claims "arise out of [and] relate to" GCMS's alleged failure to remit payment for services provided in connection with power plants in Iraq, California, and Mexico. The connection between HTS's claims and any potential conduct carried out by GCMS in Pennsylvania is simply too tenuous, without more, to support the exercise of specific jurisdiction in Pennsylvania. *See Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident.").[15]

## V.    CONCLUSION

For the reasons set forth above, HTS has failed to make a *prima facie* showing that this Court possesses either general or specific personal jurisdiction over GCMS in connection with

---

[15]    HTS's argument to the contrary is based on the unpleaded assertion that the three at-issue projects arose as a result of the Teaming Agreement. *See* HTS's Opp'n. at 14. However, were this to be true it would actually cut against a finding of specific jurisdiction, as the parties would be subject to the choice-of-law provision in the Teaming Agreement providing that Georgia law, rather than Pennsylvania law, is applicable. While not dispositive on its own, in the absence of any other indication in the Teaming Agreement that GCMS intended to avail itself of the benefits of doing business in Pennsylvania, this Georgia choice-of-law provision is further illustrative of HTS's inability to meet its *prima facie* burden.

HTS's claims.  HTS's Amended Complaint is therefore dismissed, without prejudice to HTS

pursuing its claims in a court possessing the requisite jurisdiction.[16]

BY THE COURT:


_/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Judge

---

[16]     Neither party has requested—or even addressed—the transferring this action to a court in a proper forum pursuant to 28 U.S.C. § 1631.  Under these circumstances, the Court declines to *sua sponte* transfer the action to an alternative court.  *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132–33 (3d Cir. 2020) ("Because the basis for the District Court's involuntary dismissal with prejudice was limited to lack of personal jurisdiction in Pennsylvania courts, the dismissal was not an adjudication on the merits. Fed. R. Civ. P. 41(b). So the dismissal does not trigger claim preclusion. *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 875 (3d Cir. 1944). All it precluded was relitigating the issue of personal jurisdiction in Pennsylvania. . . . If a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer."); *Mohler v. Golden 1 Credit Union*, No. 4:17-CV-02261, 2018 WL 7075296, at *6 (M.D. Pa. Dec. 17, 2018) (declining to transfer an action where "neither [party] raised the possibility of transfer . . . . Rather, [defendant] moved to dismiss the complaint 'with prejudice' for lack of personal jurisdiction. Further, [plaintiff] did not alternatively move to transfer venue, let alone address the matter of transfer, in response to [defendant's] motion to dismiss pursuant to Rule 12(b)(2). Indeed, [plaintiff] has not expressed whether, in the event the Court found personal jurisdiction to be lacking in the Commonwealth of Pennsylvania, he would prefer to assert his claims against [defendant] in an alternative forum"), *report and recommendation adopted*, No. 4:17-CV-2261, 2019 WL 247396 (M.D. Pa. Jan. 17, 2019).